1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   GORDON ARMSTRONG, BRYON
     ARMSTRONG, and JENNIFER
12   PAYAN ARMSTRONG,

13                                      NO. CIV. S-06-2200 LKK/EFB

         Plaintiffs,

14

         v.                            O R D E R

15

     MICHAEL SEXSON, AGENT CORRAL,
16   RITE-AID CORPORATION, and
     DOES 1-30,

17

         Defendants.

18   _____/

19       Plaintiffs, Gordon, Bryon and Jennifer Armstrong, bring suit

20   pursuant to 42 U.S.C. § 1983, alleging that Officer Michael Sexson

21   and Agent Michael John Corral violated their Fourth Amendment right

22   to be free from illegal search and seizure.  Sexson and Corral are

23   sued in their individual and official capacities.  Plaintiffs also

24   bring pendent state law claims against Sexson, Corral, the Rite-Aid

25   Corporation and Doe I (a Rite-Aid employee).  Pending before the

26   court are three motions to dismiss filed by the three named

1  defendants.   For the reasons discussed herein, the motions to

2  dismiss are granted in part and denied in part.

3                                    **I.**

4                          **FACTUAL ALLEGATIONS**

5        Plaintiffs' allegations stem from the search and seizure of

6  roughly 116 marijuana plants at plaintiffs' residence in Manteca,

7  California.  Plaintiffs claim they were growing marijuana for both

8  personal use and for cannabis clubs pursuant to the California

9  Compassionate Use Act. Compl. ¶ 5. Plaintiffs concede that they did

10 not know precisely how much marijuana the crop would yield, or how

11 much a cannabis cooperative would use.  Compl. ¶ 6.

12       Plaintiffs maintain that in 2004, Officer Sexson obtained a

13 "defective search warrant" to search plaintiffs' property.   The

14 warrant was allegedly defective for several reasons.  First, the

15 warrant was based on the allegedly illegal observations of Agent

16 Corral.  Comlp. ¶ 8.  The affidavit in support of the warrant

17 reflects that Corral saw plaintiff Jennifer Payne Armstrong

18 cultivating marijuana plants in a vineyard and that the marijuana

19 plants "were concealed under the vines of plants." <u>See</u> Affidavit

20 in Support of Warrant, Ex. A to Berry Decl.[1]  Plaintiffs contend

21 _____

22        [1] Although the warrant is not attached to the complaint, the
   court may take judicial notice of the warrant.  "[E]ven if a

23 document is not attached to a complaint, it may be incorporated by
   reference into a complaint if the plaintiff refers extensively to
   the document or the document forms the basis of the plaintiff's

24 claim." <u>U.S. v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).  The
   "district court may treat such a document as part of the complaint,

25 and thus may assume that its contents are true for purposes of a
   motion to dismiss under Rule 12(b)(6)."  <u>Id.</u>

26

that the warrant failed to explain how Agent Corral "got to be in a position to observe [plaintiff] 'manicuring' marijuana in a vineyard at 30500 Garden Ave." Id. Plaintiffs claim that "there is no way that Agent Corral could have made such an observation without trespassing on the subject premises." Id.

Second, plaintiffs allege that the search warrant was deficient because the "confidential warrant was not shown to be reliable in the warrant itself.  No history of reliability, honesty, or basic knowledge were set forth in the warrant." Compl. ¶ 9.[2]

Finally, plaintiffs aver that the warrant was based on stale information.  Defendant Sexson received the information regarding the confidential informant on August 24, 2004, approximately 34 days prior to the warrant being signed and 43 days prior to the execution of the warrant.

When defendant Sexson, along with other law enforcement officers, executed the search warrant on plaintiffs' property, they discovered 116 marijuana plants.  Compl. ¶ 14.  Plaintiffs also concede that there were an additional 28 plants in packaging in a trailer and a "warning system that the defendants mistakenly described as 'booby traps.'" Id. Plaintiffs contend that they were candid with the officers and informed the officers that they were growing for themselves under the Compassionate Use Act and that

---

[2]    The court assumes, but does not know, that plaintiffs meant to state "confidential informant", not "confidential warrant."

1  excess marijuana would be provided to cannabis clubs.   Id.

2      According to the complaint, plaintiffs were arrested and
3  charged with cultivation, possession with intent to sell and "booby
4  trap device."   Compl. ¶ 14.   Charges were also brought against
5  Jennifer Payne Armstrong and Bryon Armstrong for possession of
6  methamphetamine.   Id.   Plaintiffs allege that Sexson also seized
7  property and "a large amount of money had to be paid as bail by
8  each plaintiff."   Compl. ¶ 15.     The criminal charges against
9  plaintiffs were ultimately dismissed, "shortly after [plaintiffs']
10  motion to suppress all evidence obtained by the warrant was granted
11  on October 24, 2005." Compl. ¶ 15.

12      Plaintiffs bring two claims against Officer Sexson and Agent
13  Corral.    The first claim is entitled "wrongful search and
14  seizure/false imprisonment/malicious prosecution."   The second
15  claim is entitled "taking/inverse condemnation – violation of
16  California Constitution, Article I, Section 19."

17      Plaintiffs also name the Rite Aid Corporation and Doe 1 as
18  defendants.   The factual allegations regarding Rite Aid are scant.
19  Plaintiff Bryon Armstrong brought photographs to a Rite Aid in
20  Manteca for development.   One or more of the photographs depicted
21  Jennifer Payne Armstrong manicuring marijuana plants.   A loss
22  prevention officer at the Rite Aid provided these photographs to
23  the Manteca police on September 18, 2004.   Compl. ¶ 11.
24  Plaintiffs allege that the warrant was also stale because of "the
25  lack of information in the affidavit about the date of Bryon
26  Armstrong's photographs that depicted Ms. Armstrong manicuring

4

1  marijuana plants."  Compl. ¶ 11.

2     Plaintiffs bring seven causes of action against Rite Aid and

3  Doe I: conversion, intentional infliction of emotional distress,

4  negligence, nuisance, trespass, invasion of privacy and breach of

5  contract.

6                              **II.**

7               **STANDARDS FOR MOTIONS TO DISMISS**

8  On a motion to dismiss, the allegations of the complaint must be

9  accepted as true.  See Cruz v. Beto, 405 U.S. 319, 322 (1972).  The

10 court is bound to give the plaintiff the benefit of every

11 reasonable inference to be drawn from the "well-pleaded"

12 allegations of the complaint.  See Retail Clerks Intern. Ass'n,

13 Local 1625, AFL-CIO v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963).

14 Thus, the plaintiff need not necessarily plead a particular fact

15 if that fact is a reasonable inference from facts properly alleged.

16 See id.; see also Wheeldin v. Wheeler, 373 U.S. 647, 648 (1963)

17 (inferring fact from allegations of complaint).

18     In general, the complaint is construed favorably to the

19 pleader.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  So

20 construed, the court may not dismiss the complaint for failure to

21 state a claim unless it appears beyond doubt that the plaintiff can

22 prove no set of facts in support of the claim which would entitle

23 him or her to relief.  See Hishon v. King & Spalding, 467 U.S. 69,

24 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

25 In spite of the deference the court is bound to pay to the

26 plaintiff's allegations, however, it is not proper for the court

                                5

1  to assume that "the [plaintiff] can prove facts which [he or she]

2  has not alleged, or that the defendants have violated the . . .

3  laws in ways that have not been alleged." <u>Associated General</u>

4  <u>Contractors of California, Inc. v. California State Council of</u>

5  <u>Carpenters</u>, 459 U.S. 519, 526 (1983).

**III.**

**ANALYSIS**

8       Pending before the court are three motions to dismiss filed

9  by the three named defendants.  In their opposition, plaintiffs

10  concede that the claims for adverse condemnation against Officer

11  Sexson and Agent Corral must be dismissed, but oppose the remaining

12  motions.  Accordingly, the court dismisses the claims for adverse

13  condemnation.[3]  The court addresses each motion in turn.

**A.    Officer Sexson & Agent Corral's Motions to Dismiss**

15       Both Sexson and Corral move to dismiss the claims for false

16  imprisonment and malicious prosecution.  Corral also moves to

17  dismiss the claim for wrongful search and seizure.

**1.    False Imprisonment Claim**

19       Plaintiffs fail to clarify whether their claim for false

20  imprisonment is brought under federal or state law.  In their

21  opposition brief, plaintiffs simply state that "the Ninth Circuit

22  has held that under California law, false arrest is simply one way

23  of committing false imprisonment."  Opp'n at 5.  Plaintiffs then

---

25       [3]    Plaintiffs seek leave to file an amended complaint to
   bring the adverse condemnation claim against the Manteca Police
26  Department.

6

1  go on to set forth the elements of a claim for false imprisonment
2  under California state law.

3       Plaintiffs' sole factual allegation regarding their claim for
4  false imprisonment is that they were wrongfully arrested based on
5  an invalid warrant.  Given that plaintiffs already assert a claim
6  for wrongful seizure in violation of the Fourth Amendment (thereby
7  asserting a claim under Section 1983), a claim for false
8  imprisonment also under the Fourth Amendment would be redundant.
9  Plaintiffs fail to set forth any allegations which would suggest
10 that they are bringing a claim which is separate and distinct from
11 the claim of wrongful seizure.  For these reasons, the court will
12 construe the false imprisonment claims as claims pursuant to state
13 tort law.

14      To the extent that plaintiffs bring state tort claims against
15 Officer Sexson and Agent Corral, these claims must be dismissed.
16 It is well established that to sue a public employee under
17 California law, a plaintiff must first file a claim with the
18 employing public entity.  See Cal. Gov't Code § 950.2.[4] Section
19 950.2 of the California Government Code mandates that

20 _____

21      [4] Cal. Gov't Code § 950.2 provides:

22      Except as provided in Section 950.4, a cause of action
        against a public employee or former public employee for
23      injury resulting from an act or omission in the scope of his
        employment as a public employee is barred if an action
24      against the employing public entity for such injury is barred
        under Part 3 (commencing with Section 900) of this division
25      or under Chapter 2 (commencing with Section 945) of Part 4 of
        this division. This section is applicable even though the
26      public entity is immune from liability for the injury.

                                  7

1   "'a cause of action against a public employee . . . for injury
2   resulting from an act or omission in the scope of his employment
3   as a public employee is barred' unless a timely claim has been
4   filed against the employing public entity." Fowler v. Howell, 42
5   Cal. App. 4th 1746, 1750 (1996).   The California Legislature
6   "included in the Tort Claims Act what amounts to a requirement that
7   . . . one who sues a public employee on the basis of acts or
8   omissions in the scope of the defendant's employment [must] have
9   filed a claim against the public-entity employer pursuant to the
10  procedure for claims against public entities." Briggs v. Lawrence,
11  230 Cal. App. 3d 605, 612-13 (1991) (citing Cal. Gov. Code §§
12  911.2, 945.4, 950.2, 950.6(a)).   Indeed, failure to adequately
13  allege compliance with the Tort Claims Act when suing a public
14  employee requires dismissal.   See Karim-Panahi v. Los Angeles
15  Police Dept., 839 F.2d 621, 627 (9th Cir. 1988) (affirming
16  dismissal of pendent state law claims against public employee where
17  plaintiff failed to allege compliance with the Tort Claims Act).

18      Here, plaintiffs' complaint fails to allege compliance with
19  California tort claim procedures and thus, the claims for false
20  imprisonment against Sexson and Corral must be dismissed.[5]

21      **2.   Malicious Prosecution**

22      To the extent that plaintiffs are attempting to bring a state
23  cause of action for malicious prosecution, it must be dismissed for

24

---

25      [5]   The court notes that plaintiffs fail to address the
    requirements of the California Tort Claims Act in their opposition
26  brief.

8

1  the reasons discussed above, namely, failure to allege compliance

2  with the California Tort Claims Act.

3      Plaintiffs may, however, state a cause of action for malicious

4  prosecution pursuant to 42 U.S.C. § 1983.  It is well established

5  that in "order to prevail on a § 1983 claim of malicious

6  prosecution, a plaintiff 'must show that the defendants prosecuted

7  [him] with malice and without probable cause, and that they did so

8  for the purpose of denying [him] equal protection or another

9  specific constitutional right.'" Awabdy v. City of Adelanto, 368

10 F.3d 1062, 1066 (9th Cir. 2004), citing Freeman v. City of Santa

11 Ana, 68 F.3d 1180, 1189 (9th Cir. 1995).  See also Poppell v. City

12 of San Diego, 149 F.3d 951, 961 (9th Cir. 1998) (holding that

13 "malicious prosecution with the intent to deprive a person of equal

14 protection of the law or otherwise to subject a person to a denial

15 of constitutional rights is cognizable under § 1983.")

16 "[m]alicious prosecution actions are not limited to suits against

17 prosecutors but may be brought . . . against other persons who have

18 wrongfully caused the charges to be filed." Awabdy, 368 F.3d at

19 1062.

20     In the case at bar, plaintiffs allege that Sexson and Corral

21 "advised, assisted, ratified and/or directed the initiation and

22 continuation of prosecution . . . withheld exculpatory information

23 from the prosecutor, had no probable cause to justify any advocacy

24 for taking action that would result in prosecution, and acted with

25 malice." Compl. ¶ 17.

26     In support of this claim, plaintiffs allege that Sexson's

9

1  affidavit in support of the search warrant was defective and thus,

2  the subsequent search of plaintiffs' property and plaintiffs'

3  arrest violated plaintiffs' Fourth Amendment rights.[6]

4  Specifically, plaintiffs claim that the information from Agent

5  Corral was obtained illegally, that no information was provided

6  about the confidential informant, and that the affidavit was based

7  on stale information, such as the photographs.  See Compl. ¶¶ 8,

8  9, 10.  Although Agent Corral did not sign the affidavit in support

9  of the warrant, he did provide information to Officer Sexson and

10 thus could also be liable for malicious prosecution.  See Awabdy,

11 368 F.3d at 1066.

12      While plaintiffs' complaint certainly lacks detail, the court

13 may not dismiss the complaint unless it appears beyond doubt that

14 plaintiffs can prove no set of facts in support of their claim.

15 See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).  Here, it

16 is certainly possible that plaintiffs could prove facts to support

17 their claim.  Namely, plaintiffs could, on a motion for summary

18 judgment or a trial, present evidence that Agent Corral obtained

19 information illegally and that Officer Sexson filed a defective

20 affidavit in support of a search warrant and that both acted with

21 malice and with the intent to deprive plaintiffs' of their Fourth

22 Amendment rights.  The complaint alleges as much and that is all

23 that is required to survive a motion to dismiss.  For these

24

25      [6]  A mere allegation of a defective warrant is likely to be
   insufficient to support a claim for malicious prosecution.  As
26 noted above, however, plaintiffs allege more.

reasons, Sexson and Corral's motions to dismiss with respect to plaintiffs' claim for malicious prosecution must be denied.

### 3. Agent Corral's Motion to Dismiss the Wrongful Search and Seizure Claim

Agent Corral also moves to dismiss plaintiffs' claim for wrongful search and seizure.  In his five page motion to dismiss, Corral makes two general arguments, both of which are unavailing. First, Corral construes the wrongful search and seizure claim as a state law claim and argues that plaintiffs have failed to comply with the California Tort Claims Act.  See Corral Mot. to Dismiss at 3.  While Corral is correct that plaintiffs' state law claims must be dismissed for failure to comply with the California Tort Claims Act, plaintiffs' claim for wrongful search and seizure is clearly a claim under federal law, specifically, Section 1983.  Plaintiffs allege that while acting under the color of state law, Corral violated plaintiffs' Fourth Amendment right to be free from unreasonable search and seizures.  This is a claim under federal law.  See Leer v. Murphy, 844 F.2d 628, 632 -633 (9th Cir. 1988) (setting forth the requirements for Section 1983 liability).  Accordingly, there is no requirement that plaintiffs comply with the California Tort Claims Act.

Corral also argues that he did not trespass when he observed Jennifer Armstrong manicuring marijuana plants.  In Corral's reply brief he states: "It is undisputed that CORRAL'S observations of criminal activity occurring on the plaintiffs' property were made during a lawful aerial over flight . . . At

11

1  no time did CORRAL enter The Property." Corral Reply Br. at 2.

2  Corral goes on to explain that aerial observations are legal.

3  While it may be true that Corral did nothing illegal, the court

4  is adjudicating a motion to dismiss, not a motion for summary

5  judgment.   On a motion to dismiss, the allegations of the

6  complaint must be accepted as true. See Cruz v. Beto, 405 U.S.

7  319, 322 (1972).  The complaint alleges that Corral trespassed.

8  Compl. ¶ 8.  Moreover, the warrant is silent as to how Corral

9  viewed the marijuana plants.  Accordingly, the court cannot and

10  will not resolve a factual dispute as to where Corral was located

11  when he observed Ms. Armstrong and the marijuana plants.

12  Corral's factual contention that he was conducting a fly-over

13  when he observed Ms. Armstrong cultivating marijuana plants can

14  and should be raised on a motion for summary judgment or at

15  trial.  For these reasons, Corral's motion to dismiss the claim

16  for wrongful search and seizure must be denied.

17  **B.   Rite Aid's Motion to Dismiss**

18      Plaintiffs assert seven causes of action against Rite-Aid

19  and Doe I: conversion, intentional infliction of emotional

20  distress, negligence, nuisance, trespass, invasion of privacy,

21  and breach of contract.

22      As a general matter, the complaint contains almost no

23  factual allegations about Rite Aid.  It simply alleges that a

24  Rite Aid employee ("Doe I") provided to the police photos of Ms.

25  Armstrong manicuring marijuana plants. Compl. ¶ 11.  The

26  affidavit in support of the warrant provides limited additional

detail.  The affidavit states that the photo department of the Rite Aid located at 1245 West Yosemite Ave in Manteca had developed "some film that had pictures of a white female manicuring marijuana plants . . . the envelope for the photographs had the name Armstrong with an address of 30500 Gordon Ave."  See Warrant, Berry Decl., Ex. A.

Before addressing each of plaintiffs' seven causes of action, the court must address the main argument raised in plaintiffs' opposition brief.  In response to Rite Aid's motion to dismiss, plaintiffs argue that the photos of Ms. Armstrong cultivating marijuana "had no criminal relevance whatsoever, any more than a photo of Ms. Armstrong holding a Valium pill."  Pls.' Opp'n at 9.  "Given that the possession of marijuana and cultivation of cannabis is completely legal in the state of California for care givers and for patients, it was reckless for Doe I to assume that the conduct [depicted in the photos] constituted probable cause of any crime whatsoever."  Id. at 14. This argument is unavailing.

Plaintiffs misstate the protections of California's Compassionate Use Act ("Act").  While the Act does provide that marijuana may be legally grown for limited medical purposes, see Cal. Health & Safety Code § 11362.5(d), the act does not provide complete immunity from arrest.  In People v. Mower, the California Supreme Court explained:

> Even when law enforcement officers believe that a person
> who "possesses or cultivates marijuana" is a "patient"
> or "primary caregiver" acting on the "recommendation or

> approval of a physician," they may . . . have reason to believe that that person does not possess or cultivate the substance for the personal medical purposes of the patient.  Thus, we conclude that section 11362.5(d) does not grant any immunity from arrest.

People v. Mower, 28 Cal.4th 457,469 (2002).  Although the Act does not provide for complete immunity from arrest, the Mower court concluded that the Act does provide limited immunity from prosecution and that a criminal defendant could raise the Act as a defense at trial, or as the basis for a motion to set aside an indictment or information prior to trial. Id. at 470.  In short, the Act provides for an affirmative defense to prosecution, not to arrest.

As applied to the case at bar, plaintiffs claim that the photographs only depicted legal activity, namely growing medical marijuana.  Therefore, the Rite Aid employee acted unreasonably in providing the photographs to the police.  In light of Mower, this argument is without foundation.  If there is no immunity from arrest, it cannot be the case that plaintiffs have immunity from Rite Aid turning over photos of marijuana to the police. In other words, the court cannot hold a Rite Aid employee to a higher standard than police officers.  The photographs depicted marijuana plants.  While it may be that plaintiffs had sufficient prescriptions for all the plants (a fact that plaintiffs themselves do not allege), at the time the Rite Aid employee saw the photographs he only saw marijuana plants and it was

1  reasonable for him to question the legality of the plants.[7]

2  There is simply no provision of the Compassionate Use Act

3  which protects plaintiffs from the actions taken by Rite Aid in

4  this case and accordingly, there is no legal basis to claim that

5  the photographs only depicted legal conduct. With this argument

6  disposed of, the court addresses plaintiffs' seven causes of

7  action against Rite Aid.

8  **1. Conversion**

9  Plaintiffs allege that Doe I "knew or should have known that

10  his actions would cause the plaintiff's property to be removed

11  by law enforcement. Hence, RITE-AID Corporation and DOE I are

12  liable for conversion." Compl. ¶ 23.

13  Conversion is defined as the wrongful exercise of dominion

14  over the personal property of another. <u>Gruber v. Pacific States</u>

15  <u>Sav. & Loan Co.</u>, 13 Cal.2d 144, 148 (1939). The elements of a

16  conversion claim are: (1) the plaintiff's ownership or right to

17  possession of the property; (2) the defendant's conversion by a

18  wrongful act or disposition of property rights; and (3) damages.

19  <u>Burlesci v. Petersen</u>, 68 Cal. App. 4th 1062, 1066 (1998).

20

21  [7]   It is also worth noting that cultivating large quantities of marijuana is illegal under federal law, <u>see</u> 21 U.S.C. § 841 (b)(1)(B) and there is no medical marijuana exception. <u>See</u> <u>Gonzales</u>

22  <u>v. Raich</u>, 125 S. Ct. 2195 (2005). Therefore, under federal law, the photos most certainly depicted illegal conduct. Although

23  plaintiffs were not arrested or prosecuted under federal law, the Rite Aid employee certainly had no way of knowing this. In his

24  eyes, the photographs depicted activity that could constitute a crime. Because the parties have not addressed the issue, the court

25  does not consider whether a claim for a violation of federal law may be brought where the conduct violated federal law but state law

26  provides an affirmative defense to a state law violation.

15

1    Plaintiffs' allegation merely states that Doe I should have

2  known his actions would cause "plaintiffs' property to be removed

3  by law enforcement."   This statement, without more, is

4  insufficient to state a claim for conversion.  First, plaintiffs

5  fail to assert what property right they have in photographs which

6  are delivered to a pharmacy for development.  Second, plaintiffs

7  do not allege how Rite Aid's act of giving the photographs to the

8  police constituted conversion by wrongful act or disposition of

9  property rights.

10   Although the court is bound to give plaintiffs the benefit

11 of every reasonable inference to be drawn from the "well-pleaded"

12 allegations of the complaint, it is not proper for the court to

13 assume that "the [plaintiffs] can prove facts which [they have]

14 not alleged, or that the defendants have violated the . . . laws

15 in ways that have not been alleged." Associated General

16 Contractors of California, Inc. v. California State Council of

17 Carpenters, 459 U.S. 519, 526 (1983).  According, plaintiffs'

18 claim for conversion must be dismissed.

19      **2.   Intentional Infliction of Emotional Distress**

20   Plaintiffs allege that "[t]he actions of the RITE-AID

21 Corporation and DOE I, as described, constitute the tort of

22 intentional infliction of emotional distress."  Compl. ¶ 25.

23     The elements of a prima facie case of intentional

24 infliction of emotional distress in California are: (1) extreme

25 and outrageous conduct by the defendant with the intention of

26 causing, or reckless disregard of the probability of causing,

1  emotional distress; (2) the plaintiff's suffering severe or
2  extreme emotional distress; and (3) actual and proximate
3  causation of the emotional distress by the defendant's outrageous
4  conduct.  Cervantez v. J. C. Penney Co., 24 Cal. 3d 579, 593
5  (1979).  For "[c]onduct to be outrageous [it] must be so extreme
6  as to exceed all bounds of that usually tolerated in a civilized
7  community."  Id.

8      Plaintiffs have not alleged that Rite Aid took any actions
9  so extreme and outrageous so as to exceed all bounds of that
10 usually tolerated in a civilized community.  Plaintiffs have also
11 not alleged the casual connection between Rite Aid's action and
12 plaintiffs' injury.  For these reasons, the claim for intentional
13 infliction of emotional distress must be dismissed.

14     **3.  Negligence**

15     Plaintiffs allege that "the actions of the RITE-AID
16 Corporation and DOE I, as described, constitute the tort of
17 negligence".  Compl. ¶ 27.  The elements of a cause of action for
18 negligence are: (1) a legal duty to use due care; (2) a breach
19 of such legal duty; and (3) the breach as the proximate or legal
20 cause of the resulting injury.  Ladd v. County of San Mateo, 12
21 Cal. 4th 913, 917 (1996).

22     Plaintiffs have not alleged the existence of a duty on the
23 part of Rite Aid or how Rite Aid breached that duty or how Rite
24 Aid's actions caused plaintiffs' injury.  Simply stating that
25 Rite Aid acted negligently is insufficient.  Accordingly,
26 plaintiffs' claim for negligence must be dismissed.

17

### 4. Nuisance

Plaintiffs allege that "the actions of the RITE-AID Corporation and DOE I, as described, constitute the tort of private nuisance." Compl. ¶ 29. Nuisance liability arises from a violation of a duty to another that interferes with the free use and enjoyment of his or her property. <u>Cutujian v. Benedict Hills Estates Assn.</u>, 41 Cal. App. 4th 1379, 1389 (1996). The essence of a private nuisance is its interference with the use and enjoyment of land. <u>Venuto v. Owens-Corning Fiberglas Corp.</u>, 22 Cal. App. 3d 116, 124 (1971). To establish a cause of action for private nuisance, plaintiffs' must allege that defendants' substantially and unreasonably interfered with plaintiffs' interest in the use and enjoyment of their land. <u>San Diego Gas & Electric Co. v. Superior Court</u>, 13 Cal.4th 893, 938 (1996).

The actions allegedly taken by Rite Aid, namely, providing the Manteca Police Department with one or more photographs, would not, if true, constitute a claim for private nuisance. Plaintiffs fail to explain how Rite Aid's actions substantially and unreasonably interfered with plaintiffs' interest in the use of their land. Accordingly, plaintiffs' claim for nuisance must be dismissed.

### 5. Trespass

Plaintiffs allege that the actions of Rite Aid and Doe I "constitute the tort of trespass." Compl. ¶ 31. It is well established that the "essence of the cause of action for trespass is an 'unauthorized entry' onto the land of another." <u>Miller v.</u>

18

1  <u>National Broadcasting Co.</u>, 187 Cal. App. 3d 1463, 1480(2 Dist.
2  1986).

3      While plaintiffs allege that police officers entered their
4  land, they do not allege Rite Aid or Doe I entered their land.
5  Moreover, plaintiffs do not allege that Rite Aid committed
6  trespass by causing a third party to enter their land.  Even when
7  drawing all reasonable inferences in favor of plaintiffs, the
8  complaint simply fails to state a cause of action for trespass.
9  According, the claim for trespass must be dismissed

10     **6.  Invasion of Privacy**

11     Plaintiffs claim that "the actions of Defendants Rite-Aid
12  Corporation and Doe I, as described, invaded the privacy of the
13  plaintiffs in violation of the California Constitution, Article
14  I, Section 1.  The plaintiffs' reasonable expectation of privacy
15  was violated by the actions of these defendants."  Compl. ¶ 33.

16     In California, the invasion of an individual's right of
17  privacy is an actionable tort.  <u>Motschenbacher v. R. J. Reynolds</u>
18  <u>Tobacco Co.</u>, 498 F.2d 821, 823-824 (9th Cir. 1974).  Article I,
19  section 1 of the California Constitution creates a right of
20  action against private as well as government entities.  <u>Hill v.</u>
21  <u>National Collegiate Athletic Assn.</u>, 7 Cal. 4th 1, 20 (1994).
22  A plaintiff alleging an invasion of privacy must establish each
23  of the following: (1) a legally protected privacy interest; (2)
24  a reasonable expectation of privacy in the circumstances; and (3)
25  conduct by defendant constituting a serious invasion of privacy.
26  <u>Id.</u> at 39-40.

1    Plaintiffs fail to allege that they have a legally protected

2  privacy interest or a reasonable expectation of privacy in the

3  photographs.  Indeed, just the opposite appears true.  Plaintiffs

4  lost any privacy expectation when they delivered the film for

5  processing to Rite Aid, a third party.  <u>See e.g.</u>, <u>United States</u>

6  <u>v. Taylor</u>, 515 F. Supp. 1321, 1326 (D. Maine 1981) (finding

7  criminal defendants failed to show a reasonable expectation of

8  privacy in film, which depicted apparent criminal activity

9  [smuggling marijuana], delivered to commercial establishment for

10  development) aff'd, 683 F.2d 18 (1st Cir.), cert. denied, 459

11  U.S. 945 (1982); <u>Deemer v. Com.</u>, 920 S.W.2d 48 (Ky. 1996)(holding

12  that criminal defendant had no expectation of privacy with

13  respect to film he delivered to commercial entity to be developed

14  into photographs).  In <u>Deemer</u>, the Kentucky Supreme Court was

15  faced with a similar factual situation and determined that:

16  　　　　The rolls of film here were delivered to commercial
　　　　entities whose responsibility was to visually examine the
17  　　　　prints in the development process.  Appellant knew or
　　　　should have known this. In disseminating the photographs to
18  　　　　commercial entities appellant had no reasonable expectation
　　　　of privacy.
19

20  <u>Deemer</u>, 920 at 48.  Although the <u>Deemer</u> case is not binding, the

21  holding is legally sound and applies with equal force to the case

22  at hand.  Plaintiffs knew or should have known that in delivering

23  the photographs to Rite Aid, they forgo any reasonable

24  expectation of privacy.  For these reasons, plaintiffs' invasion

25  of privacy claim must be dismissed.

26  ////

1      **7.   Breach of Contract**

2      Plaintiffs final cause of action is for breach of contract.

3 Plaintiffs allege that Rite Aid entered into a contract with

4 plaintiff Bryon Armstrong when he brought his film to Rite Aid

5 for development.   According to the complaint, the contract

6 "ensured the privacy of the purchaser, and that such privacy

7 would not be breached without good reason and reasonable actions

8 by Rite-Aid and its employees."  Compl. ¶ 35.

9      To establish a breach of contract claim, a plaintiff must

10 demonstrate the existence of a contract, the plaintiff's

11 performance or excuse for nonperformance, the defendant's breach,

12 and damage to the plaintiff.  <u>Amelco Electric v. City of Thousand</u>

13 <u>Oaks</u>, 27 Cal.4th 228, 243 (2002).

14      Although plaintiffs allege the existence of a contract, the

15 complaint lacks any factual allegations to support this cause of

16 action.  Under Federal Rule of Civil Procedure 8, a pleading must

17 "contain . . . a short and plain statement of the claim showing

18 that the pleader is entitled to relief, and... a demand for

19 judgment for the relief the pleader seeks." Fed. R. Civ. P. 8(a).

20 Here, there is no allegation as to how, if at all, Rite Aid

21 breached a contract with plaintiffs.

22      Moreover, even if there was a contract, it would be

23 unenforceable as a matter of public policy.  "[A]ll bargains

24 tending to stifle criminal prosecution, whether by suppressing

25 investigation of crime or by deterring citizens from their public

26 duty of assisting in the detection or punishment of crime, are

1   void as against public policy."  Williston on Contracts § 15:8.

2   See also Lachman v. Sperry-Sun Well Surveying Co., 457 F.2d 850

3   (10th Cir. 1972) (holding that public policy would be offended

4   by enforcement of certain nondisclosure provisions in contract

5   where nondisclosure would likely permit a crime to be committed

6   without detection).

7       For these reasons, the breach of contract claim must be

8   dismissed.

9                              **IV.**

10                          **CONCLUSION**

11      1.    Defendant Rite Aid's Motion to Dismiss is GRANTED with

12            prejudice.

13      2.    Defendant Sexson's Motion to Dismiss is GRANTED with

14            respect to the claims for adverse condemnation and

15            false imprisonment and DENIED with respect to the

16            claim for malicious prosecution.

17      3.    Defendant Corral's Motion to Dismiss is GRANTED with

18            respect to the claims for adverse condemnation and

19            false imprisonment and DENIED with respect to the

20            claims for malicious prosecution and wrongful search

21            and seizure.

22      4.    Plaintiffs are given thirty days from the date of this

23            order to file an amended complaint against Corral,

24   ////

25   ////

26   ////

1          Sexson and the Manteca Police Department.

2     IT IS SO ORDERED.

3     DATED: April 24, 2007.

4

5

6                              LAWRENCE K. KARLTON
                               SENIOR JUDGE
7                              UNITED STATES DISTRICT COURT

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

23